UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE BANK OF AMERICA CORP. SECURITIES, DERIVATIVE, AND EMPLOYMENT RETIREMENT INCOME SECURITY ACT (ERISA) LITIGATION | Master File No. 09 MDL 2058 (PKC) NOTICE OF MOTION ECF CASE |
| THIS DOCUMENT RELATES TO:<br><br>CHARLES N. DORNFEST, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA CORPORATION, MERRILL LYNCH & CO, INC., KENNETH D. LEWIS, JOE L. PRICE, NEIL A.COTTY, JOHN A. THAIN, WILLIAM BARNET III, FRANK P. BRAMBLE, SR., JOHN T. COLLINS, GARY L. COUNTRYMAN, TOMMY R. FRANKS, CHARLES K. GIFFORD, MONICA C. LOZANO, WALTER E. MASSEY, THOMAS J. MAY, PATRICIA E. MITCHELL, THOMAS M RYAN, O. TEMPLE SLOAN, JR., MEREDITH R. SPANGLER, ROBERT L. TILLMAN, and JACKIE M. WARD,<br><br>Defendants. | Civil Action No. 10-cv-00275 |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
CERTIFICATION FOR INTERLOCUTORY APPEAL**

# **TABLE OF CONTENTS**

Table of Authorities ........................................................................................................ ii

Preliminary Statement .................................................................................................... 1

Summary of Argument .................................................................................................... 2

Relevant Facts ................................................................................................................. 4

Legal Argument ............................................................................................................... 9

    I.   The Denial of Dornfest's Right to Make a Certification
        Motion Presents a Controlling Question of Law: Whether
        The PSLRA Trumps the Constitutional Requirement of
        Standing .................................................................................................... 2

    II.  The Decision of the Controlling Question Will Material
        Advance the Ultimate Termination of the Litigation ............................. 17

Conclusion ...................................................................................................................... 18

Cases

*California Public Employees Retirement System v. The Chubb Corp.,*
    Civ. No. 00-4285 (GEB), 2002 U.S. Dist. Lexis 27189 (D.N.J. 2002) ................12, 13

*Chill v. Green Tree Financial Corp.,*
    181 F.R.D. 398 (D.Minn. 1998)........................................................................15, 16

*Dornfest v. Bank of America Corp., et al.,*
    1:10-cv-01673-PKC ........................................................................................1

*Famous Music Corp. v. 716 Elmwood, Inc.,*
    05-CV-0885A(M), 2007 U.S. Dist. Lexis 96789
    (W.D.N.Y. 2007) ...........................................................................................10

*Gladstone Realtors v. Village of Bellwood,*
    441 U.S. 91 (1970)........................................................................................10

*Heath v. The Board of Cty. Commissioners of Boulder Cty.,*
    92 Fed. Appx. 667 (10th Cir. 2004)..................................................................9

*Hevesi v. Citigroup,*
    366 F.3d 70 (2d Cir. 2004)................................................1, 3, 6, 14, 15, 16

*Horizon Asset Mgt. Inc. v. H & R Block,*
    580 F.3d 755 (8th Cir. 2009) ..........................................................................9

*In re IndyMac Mortgage-Backed Sec. Litig.,*
    No. 09 Civ. 4583 (LAK), 2011 WL 2508254
    (June 21, 2011 S.D.N.Y.)................................................................................11

*In re Lehman Bros. Sec. and ERISA Litig.,*
    No. 08 Civ. 6762 (LAK) 2011 WL 1453790
    (April 13, 2011 S.D.N.Y.)...............................................................................11, 12

*In re Lehman Bros. Sec. Litig.,*
    Pretrial Order No. 9, No. 09-md-2017
    (S.D.N.Y. April 24, 2009) ..............................................................................10

*In re Sumitomo Copper Litigation,*
    262 F.3d 134 (2d Cir. 2001)............................................................................3

*National Super Spuds, Inc. v. New York Mercantile Exchange,*
 660 F.2d 9 (2d Cir. 1981) ...............................................................................9

*Raines v. Byrd,*
 521 U.S. 811 (1997)...............................................................2, 9, 10, 12, 14

*The Pennsylvania Avenue Funds v. Inyx Inc.,*
 No. 08 Civ. 6857(PKC), 2011 WL 2732544
 (July 5, 2011 S.D.N.Y.) ...............................................................................8

Statutes

28 U.S.C. § 78 u-4 ................................................................................ *passim*

28 U.S.C. § 1292(b) .......................................................................................1

Rules

Fed.R.Civ.P. 23................................................................................................3

Fed.R.Civ.P. 23(f)...........................................................................................1

Charles Dornfest respectfully submits this Memorandum of Law in support of his motion pursuant to 28 U.S.C. § 1292(b) for certification of an interlocutory appeal of this Court's September 29, 2011 order ("Sept. 29th Order") that Mr. Dornfest "may not assert class claims" (Dornfest Docket No. 66[1]). Mr. Dornfest brings this motion pursuant to leave granted by the Second Circuit Court of Appeals in its March 21, 2012 Order issued in denying Mr. Dornfest's application seeking leave to appeal under Fed.R.Civ.P. 23(f) or for a writ of mandamus, 11 cv 4237 ("Mar. 21st Order")(Docket No. 77), a copy of which is attached as Ex. A.

## PRELIMINARY STATEMENT

The Second Circuit in the Mar. 21st Order stated:

> This dismissal is without prejudice to petitioner [Dornfest] seeking certification of an interlocutory appeal under 28 U.S.C. § 1292(b) on the questions petitioner raises, including whether, in this consolidated action under the Private Securities Litigation Reform Act, <u>see</u> U.S.C. § 78u-4, the court properly denied petitioner's motion for lead plaintiff status to represent a class on the ground that lead plaintiffs of a separate class object. <u>Cf.</u> <u>Hevesi v.Citigroup</u>, 366 F.3d 70, 82-83 (2d Cir. 2004).

Dornfest respectfully submits that the legal question identified by the Second Circuit and decided by this Court in its Sept. 29th Order presents a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the Sept. 29th Order may materially advance the ultimate termination of this litigation. The question to be certified is:

> Whether in a consolidated action under the Private Securities Litigation Reform Act, the court may properly deny a motion for lead plaintiff status to represent a class on the grounds that lead plaintiffs of a separate class object?

---

[1] "Dornfest Docket references are to *Dornfest v. Bank of America Corporation et al*; 1:10-cv-01673-PKC. MDL Docket references are to In Re: Bank of America Corp. etc., 1:09-md-02058-PKC.

We submit that there is substantial authority for the proposition that where, as here, lead plaintiffs of the securities class ("Lead Plaintiffs") lack standing to assert Dornfest's claims, the Private Securities Litigation Reform Act ("PSLRA") does not empower them to decide whether or not Dornfest can seek to certify his claims as class claims.

## SUMMARY OF ARGUMENT

On September 29, 2011, the District Court issued the Sept. 29th Order that Dornfest "may not assert class claims." Dornfest sought to certify a class of investors in 17 Bank of America ("BOA") options (the "BOA options class") in which he had invested, but Lead Plaintiffs did not.

On July 29, 2011, the District Court had dismissed all of Lead Plaintiffs' option claims save one (for a two year "leap" option), and had held that Lead Plaintiffs lacked standing to assert claims for investors in Dornfest's 17 BOA options, since Lead Plaintiffs had not invested in any of those options. (MDL Docket No. 405)

The Sept. 29th Order reasoned that the difference of whether the Lead Plaintiffs have, or lack standing, to assert the claim, "is not meaningful." We submit there are very substantial grounds for a difference of opinion as to this holding. The Sept. 29th Order found that goals of the PSLRA such as convenience, efficiency and discouraging "lawyer driven" litigation" override standing requirements to empower Lead Plaintiffs to preclude Dornfest from seeking certification for the Dornfest BOA options class. This ruling arguably contravenes the Supreme Court's holding in *Raines v. Byrd*, 521 U.S 811, 820 (1997), that "convenience", "efficiency", or legislative interests fail to provide and,

indeed, cannot substitute for, standing. *See, Hevesi v. Citigroup, Inc.,* 366 F.3d 70, 76 (2d Cir. 2004) quoting *In re Sumitomo Copper Litigation*, 262 F.3d 134, 140 (2d Cir. 2001).

The Sept. 29th Order appears to rest on a determination that the PSLRA mandates that only one securities class action can be brought arising out of a single factual predicate, such as the Bank of America acquisition of Merrill Lynch. Under this scenario, an appointed lead plaintiff not only manages class claims for securities investors for which it has standing, but is also empowered to preclude class claims for all investors that fall outside of this class, who the lead plaintiff does not represent. However, neither Fed. R. Civ. P. 23 nor the PSLRA purports to bestow upon Lead Plaintiffs the authority to prevent other separate and distinct classes, over which Lead Plaintiffs lack constitutional standing, from asserting their own securities claims, as class claims, against BoA arising out of the Merrill Lynch acquisition.[2] The Constitution does not permit it and nothing in the PSLRA purports to authorize it.

The PSLRA instructs a district court to appoint a lead plaintiff for a *class*, not an "event," such as Bank of America's acquisition of Merrill Lynch. Nothing in the relevant provisions of the PSLRA purport to authorize a lead plaintiff to have power over any litigation or causes of action except those for the class it was appointed to lead. This Court has held that investors in BoA options (with one limited exception) are not within the Lead Plaintiffs' class. The appointment of Lead Plaintiffs does not extend the claims Lead Plaintiffs could bring. The Lead Plaintiffs have no authority, pursuant to the PSLRA or Rule 23, to deny class treatment for all other options investors.

---

[2] Indeed, one can readily imagine a scenario where an options investor or preferred shareholder suffers a massive loss and is appointed lead plaintiff over said securities class. If such plaintiff does not also own common shares, the District Court's decision would permit that plaintiff to bar common shareholders from bringing a class action for securities fraud.

Dornfest, therefore, respectfully requests certification of the question as to whether Lead Plaintiffs of a different class may preclude Dornfest from becoming lead plaintiff for his class of BoA options investors.

**RELEVANT FACTS**

On or about January 28, 2009, the first of a number of class action complaints was filed against various defendants alleging that during the period from about September 15, 2008, through January 20, 2009, BOA and various defendants made, with scienter, untrue statements of material fact and/or omitted material statements of fact regarding $5.8 billion in bonuses paid to Merrill Lynch ("Merrill") employees and failed to disclose (although required to do so), Merrill's 15.3 billion fourth quarter losses; those misrepresentations/omissions inflated the price of BOA securities, and when the truth was disclosed in January 2009, the price of those securities plummeted.

Various plaintiffs filed notices and motions to be appointed (a) lead plaintiffs for a class of stock purchasers; (b) lead plaintiffs for derivative claimants; and (c) lead plaintiffs for a class of ERISA plaintiffs. Judge Chin ordered such appointments and also coordinated all filed cases.

On about September 25, 2009, Lead Plaintiffs filed a Consolidated Amended Class Action Complaint and alleged a section 10b-5 class to include purchasers of BOA common stock or Preferred Securities, but not option investors.

Since Lead Plaintiffs at that point had not sought to represent BOA option investors, on January 13, 2010, Dornfest filed a complaint alleging a class of investors in

BOA options, and on January 15, 2010, published a PSLRA lead plaintiff notice on Business Wire.[3]

On March 15, 2010, Dornfest filed a motion to be appointed lead plaintiff for a class of options investors[4] and Lead Plaintiffs and defendants filed briefs opposing Dornfest's motion. Significantly, in their brief filed on April 1, 2010 (Dornfest Docket No. 16), Lead Plaintiffs (at their brief p. 10 ("LP Brief")) argued that they had not abandoned options investors. They cited cases to support Lead Plaintiffs' argument (LP Brief p. 8) that stock purchasers and options investors can be "members of the same class" and argued (LP Brief p. 12) that Lead Plaintiffs should be "most capable of adequately representing the interests of <u>class members</u>" (emphasis added).

In an order issued April 9, 2010 (Dornfest Docket No. 22), Judge Chin ruled that Dornfest's action should be consolidated; that Dornfest could pursue an individual claim; and that "it is within lead plaintiff's authority to decide which claims to assert <u>on behalf of the class</u>" (emphasis added), and since Lead Plaintiffs "advise they are still assessing whether to assert claims on behalf of [option investors]…Lead Plaintiffs should be given the opportunity to make this decision."

At that time, neither Judge Chin, nor Lead Plaintiffs, nor Dornfest, questioned Lead Plaintiffs' standing to assert claims for the BOA options class. Indeed, Judge Chin's order suggests that Lead Plaintiffs, should they conclude it desirable, <u>could</u> assert option claims.

---

[3] Dornfest's Complaint showed that he had invested in 17 different BOA options; his motion to appoint lead counsel for option investors showed he incurred losses of $382,890. Dornfest admitted that his individual damages would not permit him to pursue his case (in which, for example, the service list now includes over 50 counsel) unless he was permitted to pursue his claims on a class wide basis. Letter to Judge Chin from Bragar Wexler Eagel & Squire of January 29, 2010 at 2; Transcript of Hearing on September 7, 2011 (Dornfest Docket No. 59) at 35.

[4] A group of option investors also moved to be appointed lead plaintiff for a class of BOA option investors, but in the face of Dornfest's larger loss, that group abandoned its motion.

On May 14, 2010, counsel for defendants wrote to this Court (Judge Chin had been elevated to the Circuit Court) to note, *inter alia*, that although Dornfest had been ordered to proceed individually, they proposed to treat Dornfest's action as consolidated with the Securities Action and were not required to answer his complaint. On May 18, 2010, Dornfest's counsel replied, arguing that Judge Chin did not foreclose eternally a BOA options class, but "deferred the issue" to provide "an opportunity for Lead Plaintiffs to assess whether to pursue a claim for the class of option investors" On May 20, 2010, the District Court wrote, regarding the issue of a BOA options class (Dornfest Docket No. 35):

> By May 27, 2010, Lead Plaintiffs in the Consolidated Securities Action shall inform the Court, in writing, whether any member of the Lead Plaintiffs invested in BofA options, and if so, the amount of such investment."

On May 27, 2010, Lead Plaintiffs responded and stated that no Lead Plaintiff had invested in any BOA option, "but that lead plaintiffs' counsel had been retained by Grant Mitchell" ("Mitchell") who Lead Plaintiffs' counsel stated had lost $2,486[5] (namely less than one percent of Dornfest's loss) in BOA options trading. Lead Plaintiffs' counsel said they were prepared to add Mitchell as a lead plaintiff which would satisfy any standing requirements, citing *Hevesi v. Citigroup*, 366 F.3d 70, 83 (2d Cir. 2004).

Then, on October 15, 2010, Lead Plaintiffs made the determination that BOA option claims <u>should</u> be asserted. They filed a Consolidated Second Amended Class Action Complaint that alleged a class that included BOA option investors (at ¶ 290), having determined that such a class claim should be pursued.

---

[5] This Court's July 29 order (at 24) stated that Mitchell's loss was "more than $20" but may not have factored in that each option is for 100 shares.

Defendants moved to dismiss that complaint and argued, *inter alia* that Lead Plaintiffs lacked standing to assert class claims for options other than the single call option Mitchell purchased. In response, Lead Plaintiffs argued that their standing extended to all BOA securities affected by the same alleged misstatements.

Dornfest submitted two letter briefs in opposition to defendants' motion to dismiss the options claims on standing grounds, arguing that since his case had been consolidated with Lead Plaintiffs' case, his investments in BOA options supplied standing. Defendants argued that Dornfest was incorrect and that his letter briefs should not be considered.

On July 29, 2011, this Court granted in part and denied in part defendants' motion to dismiss, holding that Lead Plaintiffs lacked standing to assert class claims on behalf of BOA securities they did not purchase and the only option (Mitchell) purchased was the January 20, 2011, "leap" (MDL Docket No. 405, at 24). Thus, this Court dismissed all the other Lead Plaintiffs' option claims and in a footnote (n.11) ruled that since Dornfest was not a named class representative, his option transactions did not confer standing on Lead Plaintiffs to assert class claims for investors who purchased the same options as did Dornfest.

On August 4, 2011, this Court noted a conference for September 7, 2011, ordered Dornfest (by his counsel) to appear, and set a briefing schedule for issues to be raised at the conference. From August 26 through September 14, 2011, the parties submitted three letter briefs on Dornfest's application to move to certify the BOA option class.

On September 7, 2011, Judge this Court held a hearing in which the Court asked one of Lead Plaintiffs' counsel about Dornfest. Counsel replied and the following exchange, *inter alia*, ensued (Dornfest Docket No. 59, at 24-29):

> [W]e determined based on the statement that you [Judge Castel] made in the *Onyx* [sic] [*The Pennsylvania Avenue Funds v. Inyx Inc.* No. 08 Civ. 6857(PKC), 2011 WL 2732544 (July 5, 2011 S.D.N.Y.)] class certification recently where you said plaintiff did not engage in short selling or any other type of unusual trading, we thought <u>we would lose our credibility if we tendered him as a class representative</u>.
>
> * * *
>
> THE COURT: And since there would be, by definition, no overlap with the claims you've asserted, I'm having difficulty seeing how I could say you can't bring a class certification motion. What he can't do is he can't say, your Honor, I'm moving, I want to be in the consolidated securities class action and I want to be one of the named plaintiffs. I agree with you. You are the fiduciaries for the class. You may not want this person in your class action. <u>He may, for whatever reason, bring down the value of your claims, and I think you as representatives of lead plaintiff have the right to exclude him from your action.</u>
>
> * * *
>
> Just as somebody's come in with derivative claims, they're in the MDL. <u>The lead plaintiffs in the securities class action couldn't say we think it's disadvantageous that there be derivative claims in the MDL. We want to shut them down, we want to shut down the ERISA claims that were previously asserted. I don't think you can do that.</u>

(Emphasis added).

The Court's comments were perfectly correct. The Court next directed that the parties submit letter briefs, and between September 14th and 23rd, the parties submitted four letter briefs. On September 29, 2011, the District Court issued its Order, holding that Dornfest "may not assert claims on behalf of a class of options holders", reasoning that "[f]or the purposes of securities fraud action brought under the PSLRA, this distinction [between claims for which Lead Plaintiffs have standing, or lack standing], is not meaningful." (Sept. 29th Order at 4).

## LEGAL ARGUMENT

**I.      The Denial of Dornfest's Right to Make a Certification Motion Presents a Controlling Question of Law: Whether The PSLRA Trumps the Constitutional Requirement of Standing.**

This Court held that Lead Plaintiffs lacked standing to assert claims for a BOA options class (save a single option, a January 2011, "leap"). Because Lead Plaintiffs did not have standing to bring the class claims Dornfest is asserting, Lead Plaintiffs do not have standing to make *any* decisions on behalf of investors in those options, including the decision whether to move to certify a class.

As the Supreme Court stated in *Raines v. Byrd*, 521 US at 819, "[w]e have always insisted on strict compliance with this jurisdictional standing requirement." *See National Super Spuds, Inc. v. New York Mercantile Exchange,* 660 F.2d 9, 17 (2d Cir. 1981) ("The most fundamental principles underlying class actions limit the powers of the representative parties to the claims they possess in common with other members of the class.").  *See also Horizon Asset Mgt. Inc. v. H & R Block*, 580 F.3d 755, 764 (8th Cir. 2009) ("once it was clear that Horizon would not pursue the derivative claims, it was error for the district court to abide by its decision to appoint Horizon as the sole lead plaintiff to prosecute a single consolidated complaint").

Standing "depends on whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult [] questions.  This is the gist of the question of standing.'"  *Heath v. The Board of Cty. Commissioners of Boulder Cty.*, 92 Fed. Appx. 667, 674 (10th Cir. 2004).  Here, Lead Plaintiffs have no personal stake in Dornfest's options claims and, therefore, have

no incentive to protect that class's interest. The PSLRA cannot provide standing where it otherwise fails to exist. Lead Plaintiffs have no the authority to control causes of action over which they do not have standing because "[w]hile Congress may give plaintiffs statutory standing to sue . . . '[I]n no event . . . may Congress abrogate the Art. III minima." *Famous Music Corp. v. 716 Elmwood, Inc.*, 05-CV-0885A(M), 2007 U.S. Dist. LEXIS 96789, at *9-10, citing *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 100 (1970); *Raines v. Byrd*, 521 U.S. 811, 820 n. 3 (1997) ("It is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.").

This Court's decision erroneously elevates the PSLRA and its policies, however desirable they may be, to a level above the constitutional requirement of standing.

This Court's holding that the distinction between Lead Plaintiffs deciding which disclosure claims to bring or not bring, or the temporal parameters of the class period,[6] and Lead Plaintiffs' decision that no one could assert class claims for which Lead Plaintiffs lacked standing, was "not meaningful," presents a controlling question of law:

> Dornfest contends that because claims on behalf of options holders were dismissed on standing grounds, options holders should be evaluated differently than shareholders who fall outside of the class period or do not have a given disclosure claim brought on their behalf. For the purposes of a securities fraud class action brought under the PSLRA, this distinction is not meaningful.

---

[6] Judge Kaplan's April 2009 order in *In re Lehman Bros. Sec. Litig.*, Pretrial Order No. 9, No. 09-md-2017 (S.D.N.Y. April 24, 2009) found that a lead plaintiff could bar claims over which lead plaintiff there had apparent standing. There, the Court's Pretrial Order No. 9 involved whether persons (the "Arkansas Plaintiffs") who purchased securities outside of the class period in "shelf registrations" could bring a separate class action. Judge Kaplan held the lead plaintiffs had the authority to determine the class period, and, in response to Arkansas Plaintiffs' assertion that lead plaintiffs had "abandoned" their pre-class period claims, Judge Kaplan stated that this was "flatly incorrect." To the contrary, Judge Kaplan wrote, "[n]othing in Pretrial Order No. 1 forecloses prosecution of these claims."

The Sept. 29th Order quoted from Dornfest's letter brief (of Sept. 4 at 4) that a lead plaintiff could determine the date range of the class, the particular claims asserted, the disclosures alleged to be false, and which person should be named as individual defendants. However, the Order stopped short. Dornfest's next sentence, omitted from the Order, was:

> On the other hand, where the lead plaintiff does not represent the particular securities at issue (ie. investors in Dornfest's seventeen options) <u>because it lacks standing</u> to do so, <u>it has no authority to determine the fate of the claims these security investors may have</u> (emphasis added).

In fact, no court has <u>ever</u> held that a lead plaintiff can preclude a class claim that the lead plaintiff lacked standing to assert.

For example, Judge Chin, in holding that Dornfest could pursue his claim individually,[7] explicitly said he was giving Lead Plaintiffs the opportunity to bring those claims, apparently assuming Lead Plaintiffs' standing. Neither he, nor any other court, ever held that if Lead Plaintiffs lacked standing, they could preclude another plaintiff with standing from pursuing a class claim.

Similarly, in cases in which a lead plaintiff was found not to have standing to bring certain claims, the court permitted other investors with standing to bring separate, related class actions so that these investors could have their claims adjudicated. *E.g.* *IndyMac Mortgage-Backed Sec. Litig.* No. 09 Civ. 4583 (LAK), 2011 WL 2508254, at *3-4 (June 21, 2011 S.D.N.Y.); *In re Lehman Bros. Sec. and ERISA Litig.*, No. 08 Civ. 6762 (LAK), 2011 WL 1453790 (April 13, 2011 S.D.N.Y.); *see also California Public Employees Retirement System v. The Chubb Corp.*, Civ. No. 00-4285 (GEB), 2002 U.S.

---

[7] As we repeatedly represented to the District Court, in a case where the service list alone includes more than 50 lawyers, the amount of Dornfest's individual claims make it impossible to justify litigating and being ready to try Dornfest's individual claims.

Dist. LEXIS 27189, at 83-91 (D.N.J. 2002) (finding that where the initial class plaintiff lacked standing to assert certain securities claims, a new plaintiff with standing could assert the class claims).[8]  None of those cases held that whether or not lead plaintiffs then adopted these new class claims should determine whether the plaintiff with standing could assert a class claim.[9]

Neither the Federal Rules of Civil Procedure, nor the PSLRA, nor case law give a lead plaintiff without standing the power to prevent other class claims from being asserted.  Notably, Section 27 of the PSLRA refers to a lead plaintiff's authority only with respect to the particular class that it represents.  For example, the PSLRA provides that:

> Not later than 90 days after the date on which a notice is published under subparagraph (A)(i), the court shall consider any motion *made by a purported class member* in response to the notice, including any motion by a class member who is not individually named as a plaintiff in the complaint or complaints, and *shall appoint as lead plaintiff the member or members of the purported plaintiff class* that the court determines to be most capable of adequately *representing the interests of class members* (hereafter in this paragraph referred to as the "most adequate plaintiff") in accordance with this subparagraph.

28 U.S.C. § 78 u-4 a(3)B(i) (emphasis added).  Nothing in the PSLRA supports the District Court's holding that a lead plaintiff's authority extends beyond its own class to any other litigation or any other class, or that such authority extends to representing the interests of persons not members of lead plaintiff's class.

---

[8] In those cases, the courts evaluated whether the newly filed class claims were barred by the applicable statutes of limitation or repose.  Here, there is no doubt (and no one challenged) that Dornfest's class claim is timely.

[9] In *Lehman*, Judge Kaplan noted 2011 WL 1453790 (S.D.N.Y. April 13, 2011) at *4 n.8, that the lead plaintiff there had joined Iowa's ["IPERS"] motion to intervene; Lead Plaintiffs there did <u>not</u> join Mississippi's ["PERSM"] motion to intervene in order to assert class claims for which lead plaintiffs in *Lehman* lacked standing.

This Court permitted many considerations – convenience, efficiency, the PSLRA,[10] a lead plaintiff's concern about its counsel's "credibility", and concerns about "lawyer driven litigation"[11] – to substitute for Lead Plaintiffs' lack of standing, and to empower Lead Plaintiffs to terminate Dornfest's right under the Federal Rules to seek class certification of claims which he, and not Lead Plaintiffs, has standing to pursue. A lead plaintiff's authority to determine the boundaries of his, her, or its ("its") claims, and its "control over the litigation as whole", is co-extensive with a lead plaintiff's standing to pursue such claims, but not greater. This Court's ruling that a lead plaintiff's authority to control all securities claims, including those it lacks standing to pursue, was unique and subject to question. No court has ever held that a lead plaintiff possesses such authority.

Any issue of "inconvenience" or efficiency cannot confer upon Lead Plaintiffs' authority to block claims over which they lack standing. As the Supreme Court noted, matters of convenience and efficiency cannot empower a court to hear an action where standing is absent: "we must put aside the natural urge to proceed directly to the merits of this important dispute and to 'settle' it for the sake of convenience and efficiency. Instead we must carefully inquire as to whether appellees have met their burden of establishing that their claimed injury is personal, particularized, concrete, and otherwise

---

[10] Of course, the PSLRA cannot confer standing upon Lead Plaintiffs to control litigation where constitutional standing is not present. *See Raines v. Byrd, supra,* 521 U.S. at 820 n.3 ("It is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.") (citation omitted).
[11] Before ruling that Dornfest may not assert class claims, the District Court made absolutely no inquiry about whether Dornfest was "a 'real' client and whether he had carefully chosen his counsel and monitored their performance to make sure that adequate representation was delivered at a reasonable price." If the District Court had made such inquiry it would have learned that although Dornfest is an individual, his claims were clearly driven by him, not his lawyers, and that he initiated, controlled and directed his litigation.

judicially cognizable." *Raines v. Byrd*, 521 U.S. 811, 820, 117 S. Ct. 2312, 2318, 138 L. Ed. 2d 849, 859 (1997).

Furthermore, this Court's concern that permitting Dornfest to seek class certification would engender "a corresponding ecosystem of separate class actions" (Order at 4) is misplaced. In most cases, the lead plaintiff will have standing (such as to set the time periods for a class), or lead plaintiffs will add other plaintiffs so that the class has standing (e.g. *Hevisi*, *supra.,* 366 F3d 70). Only in a very few cases will investors in any particular security have sufficient damages, even as a class, to justify a separate action. It is only in the instance here, where Lead Plaintiffs appear to have a conflict of interest that motivates them to decline to incorporate Dornfest, will it be necessary to have a separate, coordinated class. This Court at the hearing recognized a possible conflict if Lead Plaintiffs were to add Dornfest to their litigation ("He may, for whatever reason bring down the value of your claims"). Lead Plaintiffs, who say they lost hundreds of millions of dollars from investing in BOA stock, seek to represent a class of stock purchasers[12] who allegedly lost billions of dollars.

Under these circumstances, one can readily understand that Lead Plaintiffs would conclude Dornfest was not "well suited" to join Lead Plaintiffs' case. Dornfest made numerous trades in BOA options. While these trades were very typical for an option investor, at first glance they appear more complicated than Lead Plaintiffs' BOA stock purchases and Mitchell's purchase of a single option. Why would Lead Plaintiff's burden

---

[12] Lead Plaintiffs were appointed on June 30, 2009, by Judge Chin. At that time, they represented they had invested in BOA stock and had lost hundreds of millions of dollars, but had made no investments whatsoever in BOA options. In October 2010, when Lead Plaintiffs filed a Second Amended Complaint that included in the alleged class BOA option investors, they named only a single class representative for such options investors, Grant Mitchell, who invested in only a single option. This Court, in its decision of July 29, 2011, allowed Lead Plaintiffs to include claims for a bond and an option (Decision at 23-24).

their class by inviting Dornfest and his options trading strategy into their case? (See Transcript of Hearing of September 7, 2011, at 25-26). Lead Plaintiffs' class of BOA stock investors incurred damages that would dwarf damages incurred by a class of investors in Dornfest's 17 BOA options; Lead Plaintiffs would not share even a penny in any recovery from Dornfest's BOA options class. Considering the extra work required and the utter lack of return, it would make no strategic sense for Lead Plaintiffs to invite Dornfest to join their case. However, Lead Plaintiffs' burdens should not impair Dornfest from bringing his own class action. The court recognized just this distinction in *Chill v. Green Tree Financial Corp.,* 181 F.R.D. 398, 405-408 (D.Minn. 1998) when it held that the stock class' difficulty with an options class did not permit preclusion of the options class, but rather warranted a parallel options class. Dornfest should be permitted to achieve the same result here.

The Sept. 29th Order appears to be based significantly on the Circuit Court's decision in *Hevesi v. Citigroup Inc.*, 366 F.3d 70 (2d Cir. 2004), which stated, in a footnote, that it would be inefficient to have more than one plaintiff for the "same class." *Hevesi* at 82 n.13. In *Hevesi*, a lead plaintiff was given permission to avoid standing concerns by inviting additional class representatives to join lead plaintiff's case. *Hevesi* (at n.13) rejected the "<u>requirement</u>" (emphasis added) that a different lead plaintiff be appointed "to bring every…claim", and expressed concerns that a policy that encouraged multiple plaintiffs might undermine the policy goals of the PSLRA. However, the Circuit Court never ruled or even considered that a lead plaintiff, lacking standing to assert a claim, and declining to add a plaintiff to acquire standing for a claim, was, nevertheless,

empowered to bar a plaintiff with standing from asserting class claims for similarly situated injured persons.

*Hevesi* did not consider or address the factual circumstances, present here and in *Chill v. Green Tree Financial Corp.*, 181 FRD 398, 405-408 (D.Minn. 1998), where lead plaintiffs determined not to undertake the additional burden that asserting claim, or adding a plaintiff[13] with standing, appeared to entail.

The concerns expressed by the Second Circuit in *Hevesi* and by this Court maybe legitimate concerns, but in practice have not occurred. This Court cited no instance in which a decision that a lead plaintiff lacked standing to assert claims for certain securities spawned a school of related class actions. This Court has coordinated efficiently the numerous related BOA claims. In most every case, lead plaintiffs have welcomed plaintiffs who provided lead plaintiffs with additional standing. However, here, as in *Chill*, where the addition of another plaintiff to provide standing also appears to increase a lead plaintiff's burden, the lead plaintiff can decline to add such a plaintiff to its class. But it cannot, and should not, be allowed to bar the plaintiff with standing from pursuing a separate coordinated class claim.

The Sept. 29th Order endorses a lead plaintiff's sacrifice of claims it lacks standing to assert, to benefit other investors. The ruling overextends a lead plaintiff's PSLRA mandate. Significantly, here, Lead Plaintiffs **did** determine that class option class claims should be asserted. Also, here, Lead Plaintiffs listed five requested conditions of Dornfest's coordination, and Dornfest readily agreed to all of them.

---

[13] *See* Tr. at 26 at which lead counsel complains that Dornfest's supposed "unusual trading" might result in Lead Plaintiffs losing their "credibility" on their class motion, and *Chill* at 181 FRD at 405 ("potential prejudice [against the Stock Actions] posed by the additional legal hurdle for the Plaintiffs who seek compensation for option losses.")

While the Sept. 29th Order focuses on the policy of deterring "lawyer driven litigation", it appears to give no weight to the facts that: (1) following a year of investigation, Lead Plaintiffs then determined (in their Second Amended Complaint) that an options class claim ought to be asserted; (2) absent Dornfest asserting a class claim for BOA option investors, while allegedly defrauded BOA stock investors are likely to share a substantial recovery,[14] BOA option investors will receive nothing, and (3) the current lead plaintiff option investor has losses of only about $2,000.

## II.     The Decision of the Controlling Question Will Material Advance the Ultimate Termination of the Litigation

Although Dornfest's losses of $386,000 motivate him to be an excellent lead plaintiff, unfortunately they are wholly insufficient to warrant prosecution of his individual claim in this elephantine case.  As the Transcript of the September 7, 2011 hearing shows, Lead Plaintiffs and Defendants proposed nearly 60 merits depositions. (Tr. at 9-16). Just monitoring those depositions, not to mention participating in them and being able to stand ready trial, is far beyond the economic realities of Dornfest's losses.  Only by permitting an interlocutory appeal can this action be furthered and have an ultimate determination of its merits made.

Conclusion and Signature Block on Next Page

---

[14] Steven M. Davidoff, *A $50 Billion Claim of Havoc Looms for Bank of America*, N.Y. TIMES, Sept. 27, 2011, http://dealbook.nytimes.com/2011/09/27/for-bank-of-america-a-looming-50-billion-claim-of-havoc

**CONCLUSION**

For the foregoing reasons, plaintiff Charles Dornfest respectfully asks that the Court certify an interlocutory appeal of the question of whether in a consolidated action under the Private Securities Litigation Reform Act, the court may properly deny a motion for lead plaintiff status to represent a class on the grounds that lead plaintiffs of a separate class object.

Dated: March 27, 2012
      New York, NY

RESPECTFULLY SUBMITTED,

BRAGAR WEXLER EAGEL
  & SQUIRE, P.C.


By:  /s/ Jeffrey H. Squire_____
Jeffrey H. Squire (JS 8910)
Raymond A. Bragar (RB 1780)
885 Third Avenue, Suite 3040
New York, New York 10022¡
(212) 308-5858 (ph)
(212) 486-0462 (fax)
squire@bragarwexler.com

*Attorneys for Plaintiff Charles Dornfest*

Exhibit A

S.D.N.Y.-N.Y.C.
10-cv-275
Castel, J.

# United States Court of Appeals
### FOR THE
### SECOND CIRCUIT

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 21st day of March, two thousand twelve.

Present:

        Robert D. Sack,
        Reena Raggi,
        Christopher F. Droney,
          *Circuit Judges.*

---

Charles N. Dornfest,
        *Petitioner,*

      v.                                11-4237-mv

Bank of America Corporation,
        *Respondent,*

Ohio Public Employees Retirement System, *et al.,*
        *Intervenors.*

---

Petitioner, through counsel, seeks leave to appeal under Fed. R. Civ. P. 23(f) the district court's order denying him permission to assert claims on behalf of a class of options holders, or, in the alternative, for a writ of mandamus. Upon due consideration, it is hereby ORDERED that the Rule 23(f) petition is DISMISSED and the petition for writ of mandamus is DENIED.

We dismiss the Rule 23(f) petition because the district court's order was not an "order granting or denying class-action certification." Fed. R. Civ. P. 23(f). This dismissal is without prejudice to petitioner seeking certification of an interlocutory appeal under 28 U.S.C. § 1292(b) on the questions petitioner raises, including whether, in this consolidated action under the Private Securities Litigation Reform Act, see 15 U.S.C. § 78u-4, the court properly denied petitioner's motion for lead plaintiff status to represent a class on the ground that the lead plaintiffs of a separate class object. Cf. Hevesi v. Citigroup, 366 F.3d 70, 82–83 (2d Cir. 2004).

To the extent petitioner seeks a writ of mandamus, petitioner has not demonstrated the extraordinary circumstances that would warrant such relief.  See In re City of New York, 607 F.3d 923, 928 (2d Cir. 2010).

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk